UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

A.T. CLAYTON & COMPANY,

    **Plaintiff,**

v.                                      Case No.  8:10-mc-148-T-30TBM

DONALD HACHENBERGER,

    **Defendant.**

                                                    /

## O R D E R

THIS MATTER is before the court on the following motions:

1. **Defendant's Motion to Dissolve Writ of Garnishment and Memoranda of Law** (directed to Centennial Bank) (Doc. 46); Plaintiff's response in opposition (Doc. 62);

2. **Defendant's Motion to Dissolve Writ of Garnishment and Memoranda of Law** (directed to Regions Bank) (Doc. 47) Plaintiff's response in opposition (Doc. 63);

3. **Defendant's Motion to Dissolve Writ of Garnishment and Memoranda of Law** (directed to Fifth Third Bank) (Doc. 98); Plaintiff's response in opposition (Doc. 105);

4. **Defendant's Motion to Dissolve Writ of Garnishment and Memoranda of Law** (directed to First National Bank of Central Florida) (Doc. 100); and Plaintiff's response in opposition (Doc. 105).

By his motions, Defendant seeks an order pursuant to Rule 64, Fed. R. Civ. P., and

§ 77.07, Fla. Stat., dissolving the Writs of Garnishment directed to four garnishees–

Centennial Bank, Regions Bank, Fifth Third Bank, and First National Bank of Central Florida.

Defendant urges that the Writs are based on a Connecticut Judgment that is void due to the

failure of Plaintiff to effectuate proper service of its complaint upon him in the Connecticut litigation. Additionally, as to the Fifth Third Bank account, Defendant argues the money is not his, but rather belongs to Katharine Wertz, and thus cannot be garnished.

Plaintiff responds that the motions should be denied as service was properly effected in the Connecticut litigation, the Connecticut Judgment is valid, and Defendant has made no attempt to set aside the judgment in that action.[1] As to the Fifth Third account, Plaintiff also argues that Defendant has joint control of the money in the account and has used it for his own personal and business expenses.[2] Because I conclude that service was not properly effected on Defendant in the Connecticut litigation under Florida or federal law, the default judgment is void and cannot serve as a basis for garnishment here, and thus the subject writs should be dissolved.

I.

In November 2010, Plaintiff, A.T. Clayton & Company, initiated this miscellaneous action by registering with this court a Default Judgment against Defendant, Donald Hachenberger, in the District of Connecticut dated September 16, 2010. (Doc. 1). Thereafter, Plaintiff filed motions for writs of garnishment directed to numerous banks including the four garnishee banks at issue here. Centennial Bank, Regions Bank, Fifth Third Bank, and First

---

[1] Since the filing of Plaintiff's response and the hearing on the instant motions, Defendant has now filed a motion to vacate the default judgment, pursuant to Rules 55(c) and 60(b) in the Connecticut District Court, Case No. 3:10-cv-577. *See* (Doc. 106).

[2] Plaintiff points to the facts that Defendant is jointly named on the account with Ms. Wertz, he is the only one who has written checks on the account, and the majority of the monies contained in the account were deposits from companies owned by Defendant.

2

National Bank of Central Florida each answered the writ indicating monies were being held in accounts for Defendant by those banks. *See* (Docs. 30, 35, 80, 92).

By his motions to dissolve the writs, Defendant claims that the Connecticut Default Judgment is void and cannot legally provide the basis for a writ of garnishment. Specifically, Defendant argues that the foreign judgment is void due to the failure of Plaintiff to effectuate proper service on him in Florida.[3] Thus, he asserts that in an effort to serve him in connection with the Connecticut lawsuit, Plaintiff's process server left the Complaint and Summons at Defendant's residence at 2878 Markham Woods Road, Longwood, Florida, 32779, with William Manning. By Defendant's account, William Manning is the caretaker of this property and works for a company owned by Defendant but does not reside with Defendant. Instead, Manning lives at 2876 Markham Woods Road, Longwood, Florida, 32779. Defendant urges that while Florida law allows for substituted service of process on an individual by leaving the process at his usual place of abode with a person of the appropriate age residing therein, service on a non-resident caretaker of the property is insufficient to accomplish proper service and neither the close proximity of the residences, nor the fact that Manning had access to Defendant's house, supports the contention that Manning is a resident of Defendant's house.[4]

---

[3] Pursuant to Fed. R. Civ. P. 4(e)(1), service was purportedly made on the Defendant in accordance with Florida law, in particular, Fla. Stat. § 48.031(1)(a).

[4] Defendant cites *Hovarth v. Aetna Life Insurance Co,* 634 So. 2d 240 (Fla. Dist. Ct. App. 1994).

Moreover, even if the party to be served learns of the attempted service, this does not satisfy the requirements of Florida's statute authorizing substituted service.[5]

Plaintiff's response is two-fold. First, Plaintiff urges that service was proper as William Manning is a co-resident of the Defendant. Although Manning's numbered address is 2876 Markham Woods Road and Defendant's is 2878 Markham Woods Road, the property is essentially a single "compound" owned by the Defendant and his wife. The "compound" consists of three buildings surrounded by one fence with a single entry gate and a common driveway which leads to all three structures on the property. The property has a single mailbox, and the only reason for the different numbered addresses was compliance with a request by the fire department. For all intents and purposes, Plaintiff urges that the property is a single residence, owned by Defendant, and Mr. Manning should be considered a co-resident of the residence.[6]

Alternatively, Plaintiff urges that personal service may be waived under Florida law in certain circumstances including where, as here, Defendant has authorized someone else to accept service on his behalf.[7] And, such is consistent with Fed. R. Civ. P. 4(e)(2)(C), which allows for service upon an authorized agent. In that regard, Plaintiff points to several prior

---

[5]In support, Defendant cites *Bedford Computer Corp. v. Graphic Press, Inc.*, 484 So. 2d 1225, 1227 (Fla. 1986).

[6]Plaintiff also notes that when initially questioned as to his address, Mr. Manning stated 2878, before correcting himself to say 2876 Markham Woods Road.

[7]Plaintiff cites *George Fischer, Ltd. v. Plastiline, Inc.*, 379 So. 2d 697 (Fla. Dist. Ct. App. 1980), for the proposition that Florida recognizes the implied authority to accept service of process on behalf of another.

lawsuits in which Mr. Manning accepted service on Defendant's behalf, without objection. It notes that the call box at the front entry gate directs visitors to press "3" for deliveries, which then directly calls Mr. Manning's cellular telephone. Given Mr. Manning's comments to the process server that he was the one to whom such papers are given, coupled with his history of accepting service of process on behalf of Defendant in at least three other lawsuits, Manning is an agent authorized to accept service for the Defendant.

An evidentiary hearing on the motions was conducted April 8, 2011.

## II.

Garnishment actions are governed by Federal Rule of Civil Procedure 64 which addresses the law applicable to seizure of persons or property. In pertinent part, Rule 64 provides, "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies." Fed. R. Civ. P. 64(a). In Florida, "[s]ervice of the writ [of garnishment] shall make garnishee liable for all debts due by him or her to defendant and for any tangible or intangible personal property of defendant in the garnishee's possession or control at the time of the service of the writ . . . ." § 77.06(1), Fla. Stat. (2000). Dissolution of a writ may be obtained by a defendant, by motion, "unless the [plaintiff] proves the grounds upon which the writ was issued . . . ." § 77.07(1), Fla. Stat. (2005).

Under the Federal Constitution, foreign judgments are to be given full faith and credit of the law by courts in every jurisdiction. Art. IV, § 1, U.S. Const. "Foreign judgments, however, may be challenged on the grounds that the foreign court lacked either

personal or subject matter jurisdiction." *In re Estate of O'Keefe*, 833 So. 2d 157, 160 (Fla. Dist. Ct. App. 2002) (citing *Milligan v. Wilson*, 107 So. 2d 773, 775 (Fla. Dist. Ct. App. 1958)). Thus, Defendant may properly challenge the Connecticut default judgment here since he did not appear in the Connecticut court and the validity of service of process was not litigated there. *See, e.g., Whipple v. JSZ Fin. Co.*, 885 So. 2d 933, 938 (Fla. Dist. Ct. App. 2004) (default judgment entered by Texas court not entitled to full faith and credit in Florida where Texas court lacked personal jurisdiction over Whipple based on invalid service of process). "It is improper to allow a garnishment based upon an underlying judgment that fails." *Camodeca v. Camodeca*, 470 So.2d 863 (Fla. Dist. Ct. App. 1985).

Service of Process under the federal rules may be accomplished one of several ways. Pertinent to this case, Rule 4 provides:

> (e) Unless federal law provides otherwise, an individual . . . may be served in a judicial district of the United States by:
>
> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> (2) doing any of the following:
>  (A)  delivering a copy of the summons and of the complaint to the individual personally;
>  (B)  leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there;
>  (C)  delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

Florida service of process is governed generally by § 48.031, which provides in pertinent part:

6

> (1)(a) Service of original process is made by delivering a copy of it to the person to be served with a copy of the complaint, petition, or other initial pleading or paper or by leaving the copies at his or her usual place of abode with any person residing therein who is 15 years of age or older and informing the person of their contents.

§ 48.031(1)(a), Fla. Stat. (2004). Florida law requires strict compliance with statutes governing service of process. *Shurman v. Atl. Mortg. & Inv. Corp.*, 795 So.2d 952, 954 (Fla. 2001).

### III.

### A.

Testimony establishes that Donald Hachenberger was not personally served with the summons and complaint in the Connecticut litigation. Instead service was made on William Manning, a caretaker for Hachenberger, residing at his residential compound in Longwood, Florida. Sharon Murphy, a certified process server, testified that she received a summons and complaint in the Connecticut litigation in April 2010. She drove to the address given, pressed a button on the call box at the gated entrance and asked for Mr. Hachenberger. The person answering indicated he would be right up. She was then met at the gate by an individual (Mr. Manning) who advised that Mr. Hachenberger was not home. She informed Mr. Manning of the documents she had and was advised by him that he accepted all legal documents on Hachenberger's behalf. She then asked him if he "resided at the residence" and Mr. Manning indicated he did and the process was left with Mr. Manning.[8] Ms. Murphy could not see the

---

[8] The "Verified Return of Service" signed by Ms. Murphy and filed with the Connecticut court affirms that she:
> SUBSTITUTE served [Donald Hachenberger, 2878 Markham Woods Road, Longwood, FL.] by delivering a true copy of the SUMMONS . . . AND COMPLAINT with the date and hour of

7

residence(s) from the entrance. In an affidavit filed in support of the Plaintiff, she indicates that "[w]hen I served Mr. Manning at the house on 2878 Markham Woods Road, Mr. Manning informed me that he lived on the premises. . . . Mr. Manning told me that he was Mr. Hachenberger's assistant and that he was the person to serve when trying to serve Mr. Hachenberger." (Doc. 62-2, ¶¶ 5, 7).

William R. Manning, Jr. is an employee of Xamer, Inc., a company owned by Hachenberger. Since 2000, he has been the caretaker at property owned by Defendant and his wife. The property occupies a gated seven acres of land off Markham Woods Road in Longwood, Florida. There are three structures on the property. Manning resides in the original structure on the property now bearing the address of 2876 Markham Woods Road. Defendant resides in a separate structure that he and his wife built bearing the address of 2878 Markham Woods Road. A third structure on this property is used as a car barn and bears the address of 2874 Markham Woods Road.[9] Manning has never resided in the same residence as the Defendant. Manning's duties include accepting deliveries to the property and such deliveries have included legal process as in this case. By his account, he is not appointed to accept service of process by the Defendant and on only one occasion has he been expressly

---

> service endorsed thereon by me, to: WILLIAM MANNING as CO RESIDENT at the address of: 2878 MARKHAM WOODS ROAD, LONGWOOD, FL., the within named person's usual place of Abode, who resides therein, who is fifteen (15) years of age or older and informed said person of the contents therein, in compliance with state statutes.

(Doc. 62-1 at 1).

[9]It appears that at one time the property had a single address, but this was changed at the request of the fire department.

8

authorized to do so by the Defendant.[10]  Matters he receives on behalf of Defendant of whatever sort are deposited in a hallway off the garage leading into Defendant's house.

Donald Hachenberger testified also that he has never resided with Mr. Manning nor has he ever appointed Manning to accept service for him or any of his companies.  He and his wife purchased the parcel and then subdivided it when he built his home.  He claims never to have discussed the matter of service of process with Manning.  He acknowledged however that service of process had been made on Manning in the past related to litigation against one or the other of his companies without objection.  These matters were handled by counsel and the service was not objected to.  In another matter involving his wife, his divorce attorney handled the matter without objection to service.  Indeed, Hachenberger has never objected in the past to service of process accepted by Manning on his behalf.[11]  However, he doubts that Manning actually knew he was accepting service of process before the instant case.  In any event, Manning has access to his home when he is not home and he accepts packages and deliveries for Defendant as Manning testified.

In the matter of the account at Fifth Third Bank, Defendant and his wife formed K2 Evolution LLC, in 2004.  It was subsequently sold to Ms. Katharine Wertz.  The business's Fifth Third bank account was initially opened in Ms. Wertz's name when she bought the business.  The  Defendant's name was added on the account at some point later.  Defendant

---

[10]Manning testified that when a process server attempted to give him suit papers in connection with Hachenberger's divorce case, he was hesitant to accept them. He called Defendant on the telephone, who advised Manning that he could accept the divorce papers on his behalf.

[11]In further proof, Plaintiff offers certain exhibits of service of process in other litigation where service was not contested.  *See* (Docs. 62-3, 62-4, 62-5).

denies depositing funds into the account, but acknowledges that companies he owns may have made payments into the account for services rendered by K2 Evolution.

Katharine Wertz testified that she is the sole owner of K2 Evolution which she purchased for an unknown price in January 2007 from Don and Glenda Hachenberger. Defendant is not an employee, owner, or manager of K2 Evolution. As of January 2011, approximately one hundred sixty thousand dollars was owed to the company for the prior five years of services rendered by K2 Evolution to Defendant's companies, Highway 46 Holdings, L.L.C. and Route 46 Entertainment. Although K2 Evolution is the owner of the bank account, the company name is not listed on the account; only Ms. Wertz and Defendant are listed on the account and both have access to the checkbook for the account. Upon questioning by the court, Ms. Wertz confirmed that Defendant had the authority to write himself a check for one hundred thousand dollars from the account.

B.

Because Florida law dictates the court strictly construe the provisions of Section 48.031(1)(a), and by such construction, service of process on Defendant in the Connecticut litigation was not properly effectuated under Florida and thus federal law, the Defendant's motions are properly granted. As to Plaintiff's first argument that Mr. Manning is a "co-resident" of Defendant such that substitute service was properly effected by serving Mr. Manning, Florida law's requirement of strict compliance with service of process statutes dictates a different result. *See Shurman*, 795 So. 2d at 954; *see also Hernandez v. State Farm Mut. Auto. Ins. Co.*, 32 So. 3d 695, 698 (Fla. Dist. Ct. App. 2010) ("Because the statute allowing substituted service is an exception to the general rule requiring a defendant to be

personally served, there must be strict compliance with the statutory requirements so as to protect due process guarantees."). Florida courts have held, "[e]ssential to substituted service . . . is the fact that the person actually served must be *residing* in the house of the person to be served." *Hovarth v. Aetna Life Ins. Co.*, 634 So. 2d 240 (Fla. Dist. Ct. App. 1994) (citing *Gamboa v. Jones*, 455 So. 2d 613 (Fla. Dist. Ct. App. 1984); *Hauser v. Schiff*, 341 So. 2d 531 (Fla. Dist. Ct. App. 1977)) (emphasis in original). It is undisputed that Mr. Manning, although residing within this residential compound owned by Defendant, does not and has never resided in the same house as the Defendant. Plaintiff attempts to distinguish *Hovarth* on the basis that it involved merely a neighbor with a key looking after the defendant's house for a short period of time contrasted with Mr. Manning who is a long-term employee[12] who has been accepting mail and visitors for Defendant for a decade, who lives on the same property as the Defendant, and the structure in which he lives is owned by Defendant. Notwithstanding Plaintiff's arguments, the court finds the *Hovarth* case on point and persuasive.[13]

In *Hovarth*, the individual served was not just a neighbor, but the defendant's son-in-law, who lived directly next door, had full access to Hovarth's house, and who was clearly

---

[12]Mr. Manning's status as a long-term employee does not impact the outcome where, as here, the employee does not live with the defendant. *See Tamayo v. Caballero*, 413 So. 2d 78 (Fla. Dist. Ct. App. 1982) (service on caretaker/gardener who did not live in household of his employer was not effective substitute service on employer defendant); *see also Hauser*, 341 So. 2d at 531-32 (in holding that service on defendant's secretary at his place of business did not constitute proper substitute service on defendant, court noted, "there is no question that the person actually served must be residing in [defendant's] home").

[13]In my view, *Hovarth* is instructive on both issues of co-resident and implied authority.

11

authorized and expected by Hovarth to collect his mail during his absence from home. *Hovarth*, 634 So. 2d at 240. In the face of a similar argument, the court noted that neither the proximity of the residences nor the complete access which the son-in-law had to Defendant's home was sufficient to overcome the statutory requirement that the person served at defendant's "usual place of abode" be a "person residing therein" as mandated by § 48.031(1). *Id.* In *Hovarth*, the defendant even acknowledged having received actual notice of the proceedings from his 12-year-old grandson, but the court held that service was nevertheless defective because "attempted service of a relative who is not residing with the party to be served is insufficient, regardless of the probability that the party to be served will or does learn of the attempted service." *Id.* (citing *Bedford Computer Corp. v. Graphic Press, Inc.,* 484 So. 2d 1225, 1227 (Fla. 1986)).[14]

Plaintiff alternatively argues that both Florida and federal law authorize the acceptance of service by one person on behalf of another. Here, Plaintiff urges that Mr. Manning's acceptance of process on behalf of Hachenberger in at least three prior lawsuits, without objection, evidences his implied authority to accept service on behalf of Hachenberger. Again, given that Florida courts require strict compliance with service of

---

[14]Plaintiff's response notes that Manning testified he would leave mail, deliveries and any other such papers, such as service of process, in the hallway outside Hachenberger's master bedroom and that he never observed the mail or other papers remaining piled up in the hallway. Although Hachenberger was not questioned directly at the hearing as to whether he had actual knowledge of the lawsuit, the inference was he had to have known about it because the papers were removed from the hallway. Regardless, it appears correct that, in Florida, actual notice is not enough. *See Bedford, supra.*; *see also Woodworth v. Smith*, 773 So. 2d 1170 (Fla. Dist. Ct. App. 2000) (actual notice based on regular mail held insufficient to properly effectuate service of process pursuant to § 48.161(1), Fla. Stat.).

12

process statutes, Plaintiff's argument is unavailing. Despite the fact that he has on multiple occasions accepted suit papers directed to Hachenberger from process servers, Mr. Manning testified that, apart from one occasion, Hachenberger has never authorized him to accept service of process, nor has he appointed Manning to be his agent to accept service of process. It is not entirely clear on this record that Manning understand what "service of process" was. In any event, Defendant testified as well that he has never appointed Manning as his agent to accept service of process, nor was Manning designated with the State of Florida as registered agent for any of Defendant's companies. Defendant testified that the only time he has ever waived personal service is when he authorized Manning to accept divorce papers on his behalf from the process server.

On the issue of waiver, Florida courts have defined waiver as "the intentional relinquishment of a known right. Absent knowledge, a waiver will not arise." *Anthony v. Gary J. Rotella & Assocs.*, 906 So. 2d 1205, 1208 (Fla. Dist. Ct. App. 2005) (quoting *Fireman's Fund Ins. Co. v. Vogel*, 195 So. 2d 20, 24 (Fla. Dist. Ct. App. 1967)). The three ways in which a defendant may waive his right to be personally served is through an intentional waiver; an attempt to evade service; or by granting someone authority to accept process for him. *Anthony*, 906 So. 2d at 1208. While Florida courts have acknowledged a defendant's right to waive personal service, Plaintiff's reliance on those cases is misplaced to the extent it argues that the waiver need not be knowing or intentional. Plaintiff cites *Pota v. Holtz*, 852 So. 2d 379 (Fla. Dist. Ct. App. 2003), for the proposition that service of process may be waived in Florida by a defendant permitting another individual to accept service on his behalf. However, in *Pota*, the court determined that "Dr. Holtz authorized his attorney to

13

accept personal service and his attorney acknowledged that Dr. Holtz had been personally served." *Id.* at 381.  With that factual backdrop, the court concluded that the issue of whether Florida's long-arm statute requirements had been met was irrelevant because defendant had been personally served, noting, "[c]ounsel could not accept personal service and in the same breath challenge that very service." *Id.*  While the case supports the proposition that authority may be granted to another to accept service of process, Holtz expressly so authorized.  The instant facts differ as there was no express authority bestowed on Mr. Manning to accept service on Hachenberger's behalf.  Similarly, Plaintiff cites *Stoeffler v. Castagliola*, 629 So. 2d 196 (Fla. Dist. Ct. App. 1993), to support its position that Defendant can grant authority to another to accept service for him.  In *Stoeffler*, the court determined that service was defective because "[t]he record [did] not support that [defendant] waived personal service, that he tried to evade service, nor that he gave anyone authority to accept process for him." *Id.* at 197.  On this record, there is no indication that such authority was expressly given to Mr. Manning.  To the contrary, both Mr. Manning and Defendant testified that Manning did not have authority to accept service of process on behalf of Defendant.  Nor is there demonstrative proof that, in this instance, Defendant sought to evade service.  Thus, it follows that there was no knowing, intentional waiver of personal service by Hachenberger, nor was there an express authorization for Mr. Manning to accept service of process on his behalf.

In the absence of express authorization, Plaintiff alternatively urges that authority to accept service of process in Florida may be implied.  The evidence of record supports that Mr. Manning accepts all types of deliveries, including from process servers, on behalf of Defendant, and further that his acceptance of service of process on behalf of Defendant has

14

not been legally challenged by Defendant in any of those prior cases.[15] While this would appear to be representative of some type of acquiescence or implied authority on Defendant's part, the case relied upon by Plaintiff does not provide legal support for this position on the instant facts.

Plaintiff relies on *George Fisher, Ltd. v. Plastiline, Inc.*, 379 So. 2d 697 (Fla. Dist. Ct. App. 1980), for the proposition that Florida courts recognize an agent's implied authority to accept service of process. In that case, the plaintiff served the defendant Swiss corporation by substituted service upon the Florida Secretary of State pursuant to Florida's long-arm statute and sending via certified mail, return receipt requested, a copy of the process to Mr. Hans Fry, George Fischer, Ltd., in Southfield, Michigan. *Id.* at 698. In support of its motion to quash service of process, defendant George Fischer, Ltd., through an affidavit submitted by the president of George Fischer Corporation (who was also an employee of George Fischer, Ltd.) stated that the two entities are separate and distinct; that the Southfield address is where George Fischer Corporation is located; and that Hans Fry does not maintain an office in the United States for George Fischer, Ltd., whose principal place of business is in Switzerland. In affirming the trial court's denial of defendant's motion to quash substituted service of process, the court held that the defendant did not "make even a prima facie showing of failure to mail notice of service." *Id.* at 699.[16] Of significance, the defendant in that case was a corporation

---

[15]By Defendant's testimony, he learned of those other lawsuits through his lawyers and not through any acceptance of service of process by Mr. Manning.

[16]In so holding, the court noted that "the party attacking the service bears a preliminary burden of establishing (1) that the addressee is not at that address and does not receive mail there, (2) the employment and duties (if known) of the person who accepted the mail, (3) that such person had no actual, implied or ostensible authority to accept mail for any addressee

15

and a corporation may only accept process through some individual. *See Chapman v. Sheffield*, 750 So. 2d 140, 143 (Fla. Dist. Ct. App. 2000) (distinguishing *George Fischer, Ltd., supra*, on basis that a corporation can only act through its agents and that mail addressed to a corporation must necessarily be accepted or rejected by some company representative).

  While Plaintiff's argument regarding implied authority makes practical sense, I can find no support under Florida law based on the present record that permits an implied authority for acceptance of personal service on behalf of an individual. As noted above, the *Hovarth* opinion appears to reject an implied authority theory. In *Hovarth*, despite the fact the son-in-law had full access to defendant's house and was expected to take in the mail and newspapers while defendant was away, the ruling turned on whether the son-in-law resided in the same house as defendant. *Hovarth*, 634 So.2d at 240. The fact that the son-in-law had full authority to accept all deliveries on behalf of the defendant did not impact the ultimate outcome that service on this relative who did not live in the same house as the defendant was insufficient. Based on the evidence adduced at the hearing, I am obliged to conclude that there was no waiver here.

  The federal rule does not provide Plaintiff any different result. Under the plain language of Fed. R. Civ. P. 4(d)(1), service of process can effectively be made upon an agent. However, whether or not Manning would be considered an agent under this rule requires a consideration of the type of authorization required. Specifically, Rule 4(d)(1) permits an agent to be authorized to accept service "by appointment" or "by law." On this record,

---

listed on the envelope in question, and (4) the circumstances under which mail for the addressee was accepted on the occasion in question." *Id.* at 699.

Manning has not been appointed by law to accept service on behalf of Hachenberger. And cases defining what "by appointment" means have required an actual appointment by the defendant. *See, e.g., Franklin Amer., Inc. v. Franklin Cast Prods., Inc.*, 94 F.R.D. 645, 647 (E.D. Mich. 1982) ("an appointment must be made or authorized by the defendant."); *Szabo v. Keeshin Motor Express*, 10 F.R.D. 275, 276 (N.D. Ohio 1950) ("'By appointment' means an actual appointment by the defendant, and, if such has been made, service upon the agent gives the court jurisdiction."); 2 J. MOORE, J. LUCAS, H. FINK, & C. THOMPSON, MOORE'S FEDERAL PRACTICE, ¶ 4.12 (2d ed. 1987) ("Where actual appointment to accept service is not shown, the service is invalid."). "The rule is clear that it must appear that any agent who accepts service must be shown to have been authorized to bind his principal by the acceptance of process and, further, that the authority to accept such service cannot be shown by the extrajudicial statements of the attorney [agent]." *Schwarz v. Thomas*, 222 F.2d 305, 308 (D.C. Cir. 1955); *see also First Amer. Bank, N.A. v. United Equity Corp.*, 89 F.R.D. 81, 84 (D. D.C. 1981) ("The court finds, however, that the clerk was not . . . an authorized agent. While it is true that the clerk represented herself as such on the receipt, her acceptance of service and her own statements of authority are, in and of themselves, insufficient to establish the required agency relationship."); MOORE, *supra*, ¶ 4.12 ("The agent's acceptance of service, or his own statement as to his authority, is insufficient, standing alone, to establish authorization to receive process."). Here again, the issue turns on whether the Defendant appointed Mr. Manning to accept such process on his behalf; and by his testimony, he did not.

Because service of process was neither effective under Florida or federal law, the court need not reach the issue of who owns or controls the money held in the Fifth Third Bank account.[17]

IV.

Because I conclude that service of process on Manning did not constitute valid substitute service of process on Defendant, the Connecticut judgment is void and may not form the basis for the writs of garnishment herein.  Accordingly, upon consideration, Defendant's Motion to Dissolve Writ of Garnishment and Memoranda of Law (directed to Centennial Bank) (Doc. 46); is **granted**; Defendant's Motion to Dissolve Writ of Garnishment and Memoranda of Law (directed to Regions Bank) (Doc. 47) is **granted**; Defendant's Motion to Dissolve Writ of Garnishment and Memoranda of Law (directed to Fifth Third Bank) (Doc. 98) is **granted**; and Defendant's Motion to Dissolve Writ of Garnishment and Memoranda of Law (directed to First National Bank of Central Florida) (Doc. 100) is **granted**.

**Done and Ordered** in Tampa, Florida, this 19th day of May 2011.

_____
THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record

---

[17] However it is worth noting that, "[f]or garnishment purposes, funds on deposit in a financial institution are presumed to belong to the person or entity named on the account." *Thomas J. Konrad & Assoc., Inc. v. McCoy*, 705 So. 2d 948, 949 (Fla. Dist. Ct. App. 1998) (citing *Ginsberg*, 404 So. 2d at 1099)).  Here, Defendant was named on the account and clearly had authority over its use.